**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHANEL, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | Case No. _____ |
| | § | |
| **MORITA SIMONSON [a/k/a MORI** | § | |
| **SIMONSON] d/b/a TOO CHIC & CUTE,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff Chanel, Inc. ("Chanel," "Plaintiff," or the "Company") hereby sues defendant Morita Simonson [a/k/a Mori Simonson] doing business as Too Chic & Cute ("Defendant"), and alleges as follows:

**I.  STATEMENT OF THE CASE**

1.      This is an action for federal trademark infringement and counterfeiting, false designations of origin, federal trademark dilution, and common law trademark infringement pursuant to the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. (the "Lanham Act"), and more particularly, pursuant to 15 U.S.C. §§ 1114, 1116, 1117, 1125(a), and 1125(c), and Texas law.  In short, the Defendant is promoting, advertising, distributing, offering for sale, and selling products including earrings, necklaces, bracelets, rings, and hats bearing counterfeits and/or infringements of Chanel's iconic CHANEL and CC Monogram trademarks.  The Defendant's unauthorized use of Chanel's marks on their non-genuine goods is damaging and causing immediate and irreparable harm to Chanel, as well as deceiving and harming the consuming public.  Consequently, Chanel brings this action seeking, among other things,

1

injunctive relief, damages, and its reasonable attorney's fees and costs.

## II.  JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1338, and 15 U.S.C. § 1121.  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over the Texas common law claim, because the claim is so related to the federal claims in this action over which this Court has original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this Court pursuant 28 U.S.C. § 1391 because a substantial portion of the alleged unlawful conduct occurred within the Southern District of Texas ("District") and, upon information and belief, Defendant resides in this District, her offices and principal places of business are in this District, and she conducts business within this District.

4.      Upon information and belief, personal jurisdiction exists over the Defendant for the reasons set forth in paragraph 3 above, and because the Defendant further avails herself of the privileges and protections of the laws of the State of Texas, such that this Court's assertion of jurisdiction over the Defendant does not offend traditional notions of fair play and due process.

## III.  THE PARTIES

### 1.  The Plaintiff

5.      Chanel is a corporation duly organized under the laws of the State of New York with its principal place of business located at Nine West 57th Street, New York, New York 10019.

### 2.  The Defendant

6.      Defendant Morita Simonson is an individual, who, upon information and belief, resides at 29202 Sedgefield Street, Spring, Texas 77386, and conducts business at, among other

locations, Railway Heights Market, 8200 Washington Avenue, Houston, Texas 77007 ("Washington Avenue Location"); Big Top Entertainment (Blitzen Bazaar), Independence Park, 3449 Pearland Parkway, Pearland, Texas 77581; and Big Top Entertainment Shopping Market, Waxahachie Civic Center, 2000 Civic Center Lane, Waxahachie, Texas 75165.   Upon information and belief, Defendant uses the personal alias "Mori Simonson," and uses the alias "Too Chic & Cute" in connection with the operation of her business. Again, Defendant is directly engaging in the advertisement, promotion, and sale of counterfeit and infringing products within this District and the State of Texas as alleged herein.

## IV.  COMMON FACTUAL ALLEGATIONS

### 1.  Chanel's High-Quality Luxury Goods

7.    Chanel is a premier manufacturer and seller of a wide variety of luxury goods, and is a recognized leader in the luxury goods industry.  Relevant to this case, Chanel is engaged in the business of manufacturing, distributing, and selling throughout the world, including within this District, high-quality products including earrings, necklaces, bracelets, rings, and hats, which prominently feature Chanel's iconic CHANEL and CC Monogram trademarks.

8.    Throughout the entire process from manufacturing to distribution to sale and post-sale customer care, Chanel maintains strict quality control over its high-quality products, including its earrings, necklaces, bracelets, rings, and hats.  Expending significant time and resources perfecting its products, Chanel closely oversees the sales process to ensure that customers shopping for Chanel products experience the products the way they are meant to be experienced, and that they get the products they believe they are purchasing.  To achieve this goal and ensure that a customer's purchasing experience matches the luxury image of the Chanel brand, Chanel authorizes only its own boutiques and certain third-party retailers who are

specifically approved by Chanel following a careful review process to sell its luxury products, including its earrings, necklaces, bracelets, rings, and hats.

9.    Chanel also expends significant time and resources to build and maintain the luxury image of its high-quality products, including its earrings, necklaces, bracelets, rings, and hats.   Chanel does this by using only high-quality materials, carefully selected sales channels, and investing significant resources each year to advertise and promote these products.   As a leader in the field of luxury fashion and beauty products, Chanel ensures that all of its products, including its earrings, necklaces, bracelets, rings, and hats, are marketed and sold in a manner that befits and enhances Chanel's reputation.   It is essential to the marketing of Chanel's products that all Chanel products appear in a uniform fashion, and are displayed and sold in a manner that both enhances the value of these products and reflects Chanel's hard-earned image and reputation as the manufacturer and seller of high-end luxury goods.   Indeed, Chanel goes to great lengths and expense to present its products in an appealing manner.   The total make-up of Chanel's high-quality products, including its earrings, necklaces, bracelets, rings, and hats, is integral to these products and to the buyer's experience with Chanel's products.

10.    As a result of the Company's efforts, Chanel's earrings, necklaces, bracelets, rings, and hats, including the styles at issue in this dispute, are renowned for their high quality, and are easily identified and distinguished by Chanel's iconic marks.   Chanel's earrings, necklaces, bracelets, rings, and hats are authorized for sale in no less than one hundred retail locations throughout the United States, including within Texas, and Chanel has sold substantial quantities of its earrings, necklaces, bracelets, rings, and hats under its famous marks.

**2.  Chanel's Trademarks are Entitled To Protection**

11.    Relevant to this action in particular, Chanel is the owner of all rights (including

4

common law rights) in and to the following trademarks and United States Federal Trademark

Registrations:

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CHANEL | 1,177,400 | November 10, 1981 | IC 025 – Hats, Shawls and Belts |
| ◯◯ | 4,241,822 | November 13, 2012 | IC 025 - For Clothing, namely, Coats, Jackets, Dresses, Tops, Blouses, Sweaters, Cardigans, Skirts, Vests, Pants, Jeans, Belts, Swim Wear, Pareos, Hats, Scarves, Ties, Gloves, Footwear, Hosiery |
| ◯◯ | 1,501,898 | August 30, 1988 | IC 006 - Keychains<br>IC 014 - Costume Jewelry<br>IC 025 - Blouses, Shoes, Belts, Scarves, Jackets, Men's Ties<br>IC 026 - Brooches and Buttons for Clothing |

As reflected in the foregoing chart, these Chanel trademarks are registered in International

Classes 14 and 25, among others, and are used in connection with the manufacture and

distribution of, among other high-quality goods, earrings, necklaces, bracelets, rings, and hats

(the "Chanel Marks"). The Chanel Marks are incontestable pursuant to 15 U.S.C. § 1065, and

serve as conclusive evidence of Chanel's ownership of the Chanel Marks, and its exclusive right

to use these marks in commerce on or in connection with all of the goods identified in the

registrations, as provided by 15 U.S.C. § 1115(b).

12.    The Chanel Marks have been used in interstate commerce to identify and

distinguish Chanel's high-quality earrings, necklaces, bracelets, rings, hats, and other goods for

an extended period of time prior to the Defendant's wrongful adoption and use of counterfeits

and/or infringements of these marks.

13.     The Chanel Marks have never been assigned or licensed to the Defendant in this matter.

14.     The Chanel Marks are symbols of Chanel's quality, reputation, and goodwill and have never been abandoned.

15.     Chanel has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Chanel Marks. The Chanel Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

16.     Chanel has extensively used, advertised, and promoted the Chanel Marks in the United States in association with the sale of high-quality products including earrings, necklaces, bracelets, rings, and hats, and has carefully monitored and policed the use of the Chanel Marks.

17.     As a result of Chanel's efforts, members of the consuming public readily identify merchandise bearing the Chanel Marks as being high-quality merchandise that is sponsored and approved by Chanel.

18.     Accordingly, the Chanel Marks have achieved secondary meaning as identifiers of its high-quality earrings, necklaces, bracelets, rings, hats, and other goods.

**3.  The Defendant's Infringing Activities**

19.     Upon information and belief, at all times relevant hereto, the Defendant in this action had full knowledge of Chanel's ownership of the Chanel Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

20.     Chanel has discovered that the Defendant is promoting, advertising, distributing, offering for sale, and/or selling counterfeit and infringing products, including earrings, necklaces, bracelets, rings, and hats bearing trademarks that are exact copies of, or substantially

indistinguishable from, the Chanel Marks (the "Infringing Goods").  The Defendant is using some or all of the Chanel Marks in the same stylized fashion for different quality goods.

21.     Upon information and belief, the Defendant's Infringing Goods are of a quality substantially different than that of Chanel's genuine goods. Despite the nature of her Infringing Goods and the knowledge she is without authority to do so, the Defendant is actively promoting, advertising, distributing, offering for sale, and/or selling her Infringing Goods with knowledge that her Infringing Goods will be mistaken for the genuine high-quality products offered for sale by Chanel.  The net effect of the Defendant's actions is the confusion of consumers who will mistakenly believe that the Defendant's Infringing Goods are genuine goods that originate from, and have been approved, endorsed, and guaranteed by, Chanel.

22.     The Defendant advertises her Infringing Goods for sale to the consuming public. In so advertising these products, the Defendant uses the Chanel Marks.  The Defendant's misappropriation of Chanel's advertising ideas in the form of the Chanel Marks has occurred, in part, in the course of Defendant's advertising activities and has been a proximate cause of damage to Chanel.

23.     The Defendant is conducting her counterfeiting and infringing activities at least within this District.  As a result, the Defendant is defrauding Chanel and the consuming public for the Defendant's own benefit.  The Defendant's infringement and disparagement of Chanel does not simply amount to the wrong description of her goods or the failure of her goods to conform to the advertised quality or performance.

24.     The Defendant's use of the Chanel Marks, including the promotion, advertising, reproduction, distribution, offering for sale, and/or sale of her Infringing Goods, is without Chanel's consent or authorization.

25.     Further, the Defendant is engaging in the above-described counterfeiting and infringing activities knowingly and intentionally, or with reckless disregard or willful blindness to Chanel's rights, for the purpose of trading on the goodwill and reputation of Chanel.  If the Defendant's intentional wrongful activities are not enjoined by this Court, Chanel and the consuming public will continue to be damaged and irreparably harmed.

26.     The Defendant's above-identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers, the public, and the trade. Moreover, the Defendant's wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Chanel's genuine goods and the Defendant's Infringing Goods when, in fact, there is not.

27.     Chanel has no adequate remedy at law.

28.     The Defendant is earning substantial profits, and Chanel is suffering irreparable injury and has suffered substantial damages, as a result of the Defendant's unlawful activities described herein.

29.     The injuries and damages sustained by Chanel have been directly and proximately caused by the Defendant's wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of her Infringing Goods.

**4.  The Defendant has Ignored Chanel's Cease and Desist Letters**

30.     On August 4, 2022, an investigator for Chanel hand-delivered a letter from Chanel to an employee of the Defendant (who identified himself as the Defendant's father) at the Defendant's Washington Avenue Location, demanding that the Defendant (1) immediately cease and desist from selling products bearing counterfeits and infringements of Chanel's trademarks; (2) voluntarily surrender the products and advertising materials in her possession or under her

control that bear such marks; (3) provide written confirmation that she has discontinued selling and distributing merchandise bearing counterfeits and infringements of Chanel's trademarks; and (4) provide information and documentation relating to the purchase, sale, and source of her Infringing Goods ("First C&D Letter").  Since the Defendant was not present at the time, the Defendant's father contacted the Defendant by cell phone and the Defendant agreed to talk to Chanel's investigator who told the Defendant he was there because the Defendant was unlawfully selling, among other things, counterfeit Chanel merchandise.  Chanel's investigator also explained the First C&D Letter to the Defendant.  In response, the Defendant said that she wanted to ensure that Chanel's investigator was legitimate before endorsing the First C&D Letter or voluntarily surrendering any of her Infringing Goods.  As such, Chanel's investigator left the First C&D Letter and one of his business cards with the Defendant's father so that he could forward them to the Defendant.

31.    In response to the subsequent efforts of Chanel's investigator to follow up on this matter, the Defendant claimed that she had retained undisclosed counsel who would be contacting Chanel's investigator with a "formal response" to this matter, and that "all [infringing] items [had] been removed from [her] store."  However, contrary to the Defendant's claims, neither Chanel's investigator nor anyone else acting on behalf of Chanel ever heard from any attorney purporting to act on the Defendant's behalf and, more egregiously, the Defendant continued to sell her Infringing Goods.

32.    Consequently, on October 5, 2022, Chanel's undersigned counsel sent the Defendant a second letter via email advising that (1) Chanel had not been contacted by any attorney purporting to act on the Defendant's behalf, and requesting that if the Defendant had actually retained counsel, the Defendant provide her counsel's contact information to Chanel's

undersigned counsel or have her counsel contact Chanel's undersigned counsel immediately, so that Chanel's undersigned counsel could confer directly with the Defendant's counsel regarding this matter; and (2) Chanel would take legal action against the Defendant if, by October 14, 2022, Chanel's undersigned counsel had not been contacted by the Defendant's counsel or been provided with his contact information, and the Defendant had not otherwise (i) voluntarily surrendered all products and advertising materials in her possession or under her control that bear counterfeits or infringements of Chanel's trademarks, and (ii) provided Chanel's undersigned counsel with the information, documentation, and written confirmation requested in the First C&D Letter, so that Chanel would be in a position to discuss a possible settlement ("Second C&D Letter).

33.    On October 5, 2022, the Defendant responded to undersigned counsel's Second C&D Letter via email, in which she claimed, among other things, that her undisclosed counsel had advised her not to say anything else "at this moment," and that "[her] store is actually out of business and [the infringing] items were taken out of [her] sale portfolio."  Chanel's undersigned counsel immediately requested once again via email that the Defendant provide her counsel's contact information so that he could confer directly with the Defendant's counsel.  However, the Defendant has never provided this information, and neither Chanel's undersigned counsel nor anyone else acting on behalf of Chanel has ever been contacted by any attorney purporting to act on the Defendant's behalf.  Instead, the Defendant has continued to sell merchandise bearing counterfeits and infringements of Chanel's trademarks.  As a result, Chanel brings this action.

## V.  CAUSES OF ACTION

### 1.  Federal Trademark Infringement

34.    Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1

10

through 33 above.

35.     This is an action for trademark infringement against the Defendant based on her manufacture, promotion, advertisement, distribution, offering for sale, and/or sale of products including earrings, necklaces, bracelets, rings, and hats using marks that are substantially similar and, in some instances, virtually identical to one or more of the Chanel Marks.

36.     Specifically, the Defendant is promoting, advertising, distributing, offering for sale, and selling products including earrings, necklaces, bracelets, rings, and hats bearing colorable imitations of the Chanel Marks.  In so doing, the Defendant is continuously infringing, directly and contributorily, the Chanel Marks by using them to advertise, promote, and sell products including earrings, necklaces, bracelets, rings, and hats bearing the Chanel Marks.

37.     The Defendant's infringing activities are likely to cause confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of the Defendant's Infringing Goods.

38.     The Defendant's unlawful actions have caused and are continuing to cause unquantifiable damage to Chanel.

39.     The Defendant's above-described actions constitute infringement of the Chanel Marks in violation of Chanel's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.  As established by the registration of the marks, the Chanel Marks are protectable and enforceable against the Defendant, and Chanel is the owner and senior user of the marks.

40.     Chanel has suffered and will continue to suffer irreparable injury due to the above-described activities of the Defendant if the Defendant is not enjoined.

41.     Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Chanel is entitled to recover from the Defendant: (1) the Defendant's profits and (2) the costs of this action.  Due

to the knowing, intentional, and purposeful nature of the Defendant's conduct, Chanel seeks treble the amount of its actual damages. Alternatively, Chanel is entitled to statutory damages of up to two million dollars ($2,000,000.00) per counterfeit mark, per type of goods sold, offered for sale or distributed, due to the Defendant's willful counterfeiting in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117(c)(2). Chanel also seeks its reasonable attorneys' fees due to the exceptional nature of this case.

## 2. Federal Trademark Counterfeiting

42. Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 41 above.

43. This is an action for trademark counterfeiting against the Defendant based on her promotion, advertisement, distribution, offering for sale, and/or sale of products including earrings, necklaces, bracelets, rings, and hats bearing counterfeits of one or more of the Chanel Marks.

44. Specifically, the Defendant is promoting, advertising, distributing, offering for sale, and selling at least earrings, necklaces, bracelets, rings, and hats bearing counterfeits of the Chanel Marks. The Defendant is continuously infringing and inducing others to infringe the Chanel Marks.

45. The Defendant's counterfeiting activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of the Defendant's goods.

46. The Defendant's unlawful actions have caused and are continuing to cause unquantifiable damage to Chanel.

47. The Defendant's above-described illegal actions constitute counterfeiting of the

12

Chanel Marks in violation of Chanel's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114. As established by the registration of the marks, the Chanel Marks are protectable and enforceable against the Defendant, and Chanel is the owner and senior user of the marks.

48.    Chanel has suffered and will continue to suffer irreparable injury due to the above-described activities of the Defendant if the Defendant is not enjoined.

49.    Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Chanel is entitled to recover from the Defendant: (1) the Defendant's profits and (2) the costs of this action. Due to the knowing, intentional, and purposeful nature of the Defendant's conduct, Chanel seeks treble the amount of its actual damages.  Alternatively, Chanel is entitled to statutory damages of up to two million dollars ($2,000,000.00) per counterfeit mark, per type of goods sold, offered for sale or distributed, due to the Defendant's willful counterfeiting in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117(c)(2).  Chanel also seeks its reasonable attorneys' fees due to the exceptional nature of this case.

### 3.  False Designations of Origin

50.    Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 49 above.

51.    The Defendant's Infringing Goods bearing and sold under the Chanel Marks have been widely advertised and distributed throughout the United States.

52.    The Defendant's Infringing Goods including earrings, necklaces, bracelets, rings, and hats bearing and sold under the Chanel Marks are different and likely inferior in quality from genuine Chanel goods.  Accordingly, the Defendant's activities are likely to cause confusion in the trade and among the general public as to, at least, the origin or sponsorship of the Infringing Goods.

53.     In connection with her sale of Infringing Goods, the Defendant has used false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe or represent such goods.  Moreover, the Defendant has caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Chanel's detriment.

54.     Specifically, the Defendant has used the Chanel Marks in the Defendant's advertisement and promotion of her products including earrings, necklaces, bracelets, rings, and hats.  The Defendant has misrepresented to members of the consuming public that the Infringing Goods being advertised and sold by her are genuine, non-infringing products when, in fact, they are not.

55.     The Defendant's above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

56.     Chanel has sustained injury and damage caused by Defendant's conduct, and absent this Court's entry of an injunction enjoining such conduct, Chanel will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

57.     Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Chanel is entitled to recover from the Defendant: (1) the Defendant's profits and (2) the costs of this action.  Due to the knowing, intentional, and purposeful nature of the Defendant's conduct, Chanel seeks treble the amount of its actual damages. Chanel also seeks its reasonable attorneys' fees due to the exceptional nature of this case.

### 4.  **Federal Trademark Dilution**

58.     Plaintiff adopts and re-alleges the allegations set forth in Paragraphs 1 through 57 above.

59.     The Chanel Marks are extraordinarily famous and well known throughout the United States, having been used exclusively and extensively by Chanel for decades.  By reason of Chanel's extensive advertising and use, the Chanel Marks have become highly distinctive of Chanel's goods, and are uniquely associated with Chanel.  The Chanel Marks were famous long before the Defendant imported, offered for sale, or sold her Infringing Goods.

60.     The Defendant's unauthorized distribution and sale of products bearing the Chanel Marks for goods that are not among Chanel's current U.S. product line, do not comply with Chanel's quality control policy and will tarnish Chanel's reputation and injure the value of the Chanel Marks to Chanel as indicators of the high-quality goods that consumers have come to expect from Chanel, in violation of 15 U.S.C. §1125(c).

61.     Upon information and belief, the Defendant does not own any federal or state trademark registrations for any mark that includes, in whole or in part, any of the Chanel Marks, and cannot assert any rights in the Chanel Marks that are prior to Chanel's rights.

62.     The Defendant's conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to both damage Chanel and deceive the public unless enjoined by this Court.  Chanel has no adequate remedy at law.

63.     Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a) and due to the willful dilution committed by the Defendant, Chanel is entitled to recover from the Defendant: (1) the Defendant's profits and (2) the costs of this action.  Due to the knowing, intentional, and purposeful nature of the Defendant's conduct, Chanel seeks treble the amount of its actual damages.  Chanel also seeks its reasonable attorneys' fees due to the exceptional nature of this case.

## 5. __Common Law Trademark Infringement__

64.    Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 63 above.

65.    This is an action for common law trademark infringement against the Defendant based on her promotion, advertisement, distribution, offering for sale, and sale of the Infringing Goods in violation of the common law of the State of Texas.

66.    Specifically, the Defendant is promoting, advertising, distributing, offering for sale, and selling infringing products bearing the Chanel Marks.  As established by the registration of the marks, the Chanel Marks are protectable and enforceable against the Defendant, and Chanel is the owner and senior user of the marks.

67.    The Defendant's infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of the Defendant's Infringing Goods.    Chanel has no adequate remedy at law, and is suffering damages and irreparable injury as a result of the Defendant's actions.

68.    Chanel has sustained injury and damage caused by the Defendant's conduct, and absent this Court's entry of an injunction enjoining such conduct, Chanel will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

69.    Under Texas law, Chanel is entitled to recover, in addition to the Defendant's profits, exemplary damages due to the knowing, willful, and intentional nature of the Defendant's actions.

## VI.  **PRAYER FOR RELIEF**

70.    For the reasons set forth above, Chanel respectfully requests that judgment be entered in favor of Chanel on all causes of action set forth in this Complaint, and that both equitable and monetary relief be awarded in favor of Chanel and against the Defendant, as follows:

A.    Entry of a permanent injunction enjoining the Defendant, her agents, representatives, servants, employees, and all those acting in concert or participation therewith, from:

(1)  manufacturing or causing to be manufactured, importing, advertising, promoting, distributing, offering to sell, or selling any goods, including but not limited to, earrings, necklaces, bracelets, rings, and hats, which bear the Chanel Marks;

(2)  infringing, counterfeiting, diluting or tarnishing the Chanel Marks;

(3)  using the Chanel Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods;

(4)  using any logo, trade name, trademark, or trade dress which may be calculated to falsely advertise the services or products of the Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with Chanel;

(5)  falsely representing themselves as being connected with Chanel, through sponsorship or association, or engaging in any act which is likely to falsely cause members of the trade and/or purchasing public to believe any goods or services of the Defendant is in any way endorsed by, approved by, and/or associated with Chanel;

(6)  using any reproduction, counterfeit, copy, or colorable imitation of the Chanel Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by the Defendant, including, without limitation, earrings, necklaces, bracelets, rings, and hats;

(7)  affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent the Defendant's goods as being those of Chanel, or that such goods are in any way endorsed by Chanel, and from offering such goods in commerce; and

17

(8)  otherwise unfairly competing with Chanel.

B.      Entry of an Order requiring the Defendant, within thirty (30) days after entry of the injunction, to account to Chanel (in writing and under oath) and pay Chanel for all profits and damages resulting from the Defendant's unfair competition, trademark infringement, trademark counterfeiting, and dilution activities, and that the award to Chanel be trebled, as provided for under 15 U.S.C. §1117, or, at Chanel's election with respect to its federal trademark counterfeiting claims, that Chanel be awarded statutory damages from the Defendant in the amount of two million dollars ($2,000,000.00) per counterfeit Chanel Mark, per type of goods sold, offered for sale or distributed, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

C.      Entry of an Order pursuant to 15 U.S.C. §1118 that all materials in the Defendant's possession or under her control bearing counterfeits or infringements of the Chanel Marks, or marks that otherwise dilute the Chanel Marks, be surrendered for destruction.

D.      Entry of an Order pursuant to 15 U.S.C. §1117(a) and (b) awarding Chanel its costs and reasonable attorneys' fees and investigators' fees associated with bringing this action.

E.      Entry of an Order awarding Chanel both pre-judgment and post-judgment interest on all monetary amounts awarded at the applicable federal rate.

F.      Entry of an Order requiring the Defendant, within thirty (30) days after entry of the judgment, to file with the Court and serve Chanel with a sworn statement setting forth the manner and form in which she has complied with all provisions of the judgment.

G.      Entry of an Order awarding Chanel such other and further relief, as the Court deems proper and just.

Dated: February 3, 2023.

Respectfully submitted,

BY:  s/Steven M. Abbott
    Steven M. Abbott
    State Bar No. 00797825
    Federal I.D. No. 9027
Attorney-in-charge for Plaintiff
Chanel, Inc.
6363 Woodway Drive, Suite 825
Houston, Texas 77057
Telephone: (713) 467-1669
Facsimile:  (713) 467-4936
E-mail: abbottsteven@hotmail.com