**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHANEL, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **Case No. 4:23-cv-00406** |
| | § | |
| **MORITA SIMONSON,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S MOTION FOR ENTRY OF A FINAL DEFAULT JUDGMENT**
**AND PERMANENT INJUNCTION AGAINST DEFENDANT,**
**AND MEMORANDUM OF LAW IN SUPPORT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff Chanel, Inc. ("Chanel" or "Plaintiff") files this Motion for Entry of a Final

Default Judgment and Permanent Injunction Against Defendant, and Memorandum of Law

in Support ("Motion").

## TABLE OF CONTENTS

I.   NATURE AND STAGE OF PROCEEDING ………………………………………1

II.   STATEMENT OF RELEVANT FACTS...……………………………………...1

   A.  Chanel's Trademarks are Entitled to Protection........................................1

   B.  Defendant's Unlawful Acts..................................................................3

III.  ISSUES TO BE RESOLVED…………………………………………………..6

IV.  STANDARD OF REVIEW...…………………………………………………...6

i

V. ARGUMENT............................................................................................7

   A. Standard for Default Judgments…………………................................................7

      1. Default Judgment is Procedurally Appropriate………………………………..8

      2. Chanel Presents Colorable Claims for Relief…………………………………8

         (i) Federal/Common Law Trademark Infringement
            & False Designations of Origin...............................................................9

         (ii) Trademark Counterfeiting.........................................................................10

         (iii) Trademark Dilution................................................................................11

      3. Chanel is Entitled to Permanent Injunction, Statutory Damages,
         Reasonable Attorney Fees, and Costs.........…………………………………13

         (i) Permanent Injunction...............................................................................13

         (ii) Statutory Damages..................................................................................15

         (iii) Attorney's Fees......................................................................................18

         (iv) Costs......................................................................................................19

VI. CONCLUSION...……………………………………………………………………20

## TABLE OF AUTHORITIES

**Cases**

Arista Records, Inc. v. Beker Enter.Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003)......11

Arthur F. Williams, Inc, v. Helbig, 208 F.R.D. 41, 44 (E.D.N.Y. 2002)..............................6

Board of Regents of the University of Houston System v. Houston College of Law,
214 F. Supp. 3d 573, 605 (S.D. Tex. 2016).........................................................................14

Cartier Intern. B.V. v. Ben-Menachem, 2008 WL 64005, *14 (S.D.N.Y. 2008)................16

Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., 778 F. Supp. 2d 726, 751
(N.D. Tex. 2011)................................................................................................13

Cypress-Fairbanks Independent School Dist. v. Michael F. by Barry F.,
118 F.3d 245, 257 (5th Cir. 1997).....................................................................20

Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc.,
269 F.3d 523, 527 (5th Cir. 2001)..................................................................7, 15

Dunkin' Donuts, Inc. v. Mercantile Ventures, 1994 WL 93257, *2
(5th Cir. March 7, 1994)...............................................................................18-19

eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)............................14

Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)............................6

Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006)............16

Gucci America, Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520
(S.D.N.Y. 2004), overruled on other grounds, Louis Vuitton Malletier S.A.
v. LY USA, Inc., 676 F.3d 83, 106 (2d Cir. 2012)..............................................15

Lacy v. Sitel Corp., 227 F.3d 290, 292 (5th Cir. 2000)....................................6-7

Lindsey v. Prive Corp., 161 F.3d 886, 893 (5th Cir. 1998)..................................7

Louis Vuitton Malletier and Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 583
(E.D. Pa. 2002)...................................................................................................11

Louis Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d 485, 499
(S.D.N.Y. 2015)...................................................................................................11

Money Management International, Inc. v. Le, No. 4:21-cv-01802,
2022 WL 1610576, at *6 (S.D. Tex. April 27, 2022)..........................................18

Nola Spice Designs, LLC v. Haydel Enters., Inc., 783 F.3d 527, 548
(5th Cir. 2015)....................................................................................................12

Petmed Express, Inc. v. Medpets.com, Inc., 336 F. Supp. 2d 1213, 1220
(S.D. Fla. 2004)...................................................................................................15

Phillip Morris U.S.A., Inc. v. Liu, 489 F. Supp. 2d 1119, 1123-24
(C.D. Cal. 2007)..................................................................................................16

Protection One Alarm Monitoring, Inc. v. Executive Protection One
Security Service, LLC, 553 F. Supp. 2d 201, 210-11 (E.D.N.Y. 2008)..............................19

RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC, 655 F. Supp. 2d 679, 697
(S.D. Tex. 2009)...........................................................................................................9

Schotzky's, Ltd. v. Sterling Purchasing & Nat'l Distribution Co., Inc.,
520 F.3d 393, 402 (5th Cir. 2008)...........................................................................18

Springboard to Educ., Inc. v. Kipp Found., 325 F. Supp. 3d 704, 713
(N.D. Tex. 2018).....................................................................................................10-11

Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.,
954 F. Supp. 2d 145, 156 (E.D.N.Y 2013)................................................................18

Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc., 851 F.3d 440, 450
(5th Cir. 2017)............................................................................................................9-10

Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 567 (5th Cir. 2005).......................13

U.S. v. Shipco General Inc., 814 F.2d 1011, 1014 (5th Cir. 1987)..................................7

Vela v. M&G USA Corp., 2:17-cv-13, 2020 WL 421188, at *1
(S.D. Tex. Jan. 27, 2020)............................................................................................7

Wescosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1083
(C.D. Cal. 2012)............................................................................................................13

Wooten v. McDonald Transit Assoc., Inc., 788 F.3d 490, 498 (5th Cir. 2015)....................7

Zastrow v. Houston Auto M. Imports Greenway, Ltd.,
695 F. App'x 774, 780 (5th Cir. 2017)......................................................................20

**Statutes**

15 U.S.C. § 1065..............................................................................................................2

15 U.S.C. § 1114................................................................................................................8

15 U.S.C. § 1114(1)(a).....................................................................................................10

15 U.S.C. § 1115(b)..........................................................................................................9

15 U.S.C. § 1116(d)(1)(B) .................................................................11

15 U.S.C. § 1117(a) ....................................................................18-19

15 U.S.C. § 1117(b) .......................................................................18

15 U.S.C. § 1117(c) .......................................................7, 15, 18, 20

15 U.S.C. § 1117(c)(1) ....................................................................15

15 U.S.C. § 1117(c)(2) ....................................................................15

15 U.S.C. § 1125(a)(1)(A) .................................................................8

15 U.S.C. § 1125(c) .......................................................................8-9

15 U.S.C. § 1125(c)(1) .....................................................................2

15 U.S.C. § 1125(c)(2)(A) ................................................................12

15 U.S.C. § 1125(c)(2)(B) ................................................................12

15 U.S.C. § 1125(c)(2)(C) ................................................................12

15 U.S.C. § 1127 ...........................................................................11

28 U.S.C. § 1920(1) ........................................................................19

50 U.S.C. § 3931 .............................................................................1

## Rules

Fed. R. Civ. P. 54(d) .......................................................................19

Fed. R. Civ. P 55(b)(2) .....................................................................1

## Other Authorities

S. Rep. 104-177, at 10 (1995) ...........................................................15

# **EXHIBITS**

A:    Declaration of Elizabeth Han

     Composite Exhibit 1: Federal Registrations for Chanel Marks at Issue

B:    Declaration of Joel Voyles

     Composite Exhibit 1: Counterfeit Chanel Merchandise Purchased & Displayed, Sales Receipt, & Defendant's Business Card from Defendant's Washington Location on 08/04/22; Screenshots from Defendant's Facebook Page on 08/04/22

     Exhibit 2: Chanel's First Cease and Desist Letter Dated 08/04/22

     Composite Exhibit 3: Counterfeit Chanel Merchandise Purchased & Displayed, Sales Receipt, & Defendant's Business Card from Defendant's Waxahachie Location on 08/06/22

     Composite Exhibit 4: Voyles' Email Correspondence with Defendant

     Composite Exhibit 5: Counterfeit Chanel Merchandise Purchased & Displayed, Sales Receipt, & Defendant's Business Card from Defendant's Pearland Location on 12/02/22

C:    Declaration of Steven M. Abbott

     Exhibit 1: Chanel's Second Cease and Desist Letter Dated 10/05/22

     Exhibit 2: Email Correspondence Between Defendant and Steven M. Abbott on10/05/22

     Exhibit 3: Article Entitled "Rising Stars: Meet Mori Simonson" (VoyageHouston 05/31/22)

     Composite Exhibit 4: Attorney's Fees and Costs Invoiced to Chanel

     Exhibit 5: Attorney's Fees Not Yet Invoiced to Chanel

D:    Declaration of Shelley Swaim

## I.  **NATURE AND STAGE OF THIS PROCEEDING**

Chanel brings this action against Defendant for trademark counterfeiting and infringement, false designations of origin, trademark dilution, and common law trademark infringement. In short, Defendant willfully sold and continued to sell counterfeit Chanel merchandise despite (1) receiving two cease and desist letters, a verbal warning, and multiple email warnings from Chanel to stop; and (2) lying that she'd removed such merchandise from her inventory and stopped selling it, when she hadn't.

Defendant is in default, which was entered April 18, 2024.  Pursuant to Fed. R. Civ. P 55(b)(2), Chanel now moves for entry of a final default judgment awarding Chanel a permanent injunction, statutory damages, reasonable attorney's fees, and costs.   In compliance with Fed. R. Civ. P 55(b)(2) and 50 U.S.C. § 3931, Chanel affirms that Defendant is neither a minor, incompetent nor in the military.  See Ex. C – Abbott Decl. ("Abbott") at ¶ 6, pp. 3-4.

## II.  **STATEMENT OF RELEVANT FACTS**

### A.  **Chanel's Trademarks are Entitled to Protection**

Chanel is a premier manufacturer and seller of a wide variety of luxury goods and a recognized leader in the luxury goods industry.  See Complaint ("Dkt. 1") [Dkt. 1, ¶ 7, p. 3]; Ex. A – Han Decl. ("Han") ¶¶ 5-7, pp. 2-3.  Relevant to this case, Chanel is engaged in the business of manufacturing, distributing, and selling throughout the world, including within this District, high-quality products including earrings, necklaces, bracelets, rings, and hats, which prominently feature the following iconic Chanel trademarks ("Chanel Marks" or "Marks"):

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CHANEL | 1,177,400 | November 10, 1981 | IC 025 – Including hats |
| ᗯᑕ (logo) | 4,241,822 | November 13, 2012 | IC 025 - Including hats |
| ᗯᑕ (logo) | 1,501,898 | August 30, 1988 | IC 014 - Costume Jewelry |

See Dkt. 1, ¶ 11, pp. 4-5; Han ¶ 4, p. 2. Chanel owns all rights to the Chanel Marks, which are symbols of Chanel's quality, reputation, and goodwill; distinctive; have never been abandoned; and are incontestable pursuant to 15 U.S.C. § 1065. See Dkt. 1, ¶¶ 11, 14, and 16-18, pp. 4-6; Han ¶¶ 4 and 7, pp. 2-3. Chanel has expended substantial resources developing and promoting these Marks; has used them continuously, exclusively, and extensively in interstate commerce throughout the United States and globally in association with its high-quality goods; and has carefully monitored and policed their use. See Dkt. 1, ¶¶ 15-16, p. 6; Han ¶¶ 7-8, p. 3. As a result, consumers readily identify products bearing the Chanel Marks as quality merchandise that is sponsored and approved by Chanel. See Dkt. 1, ¶¶ 17-18, p. 6; Han ¶ 7, p. 3. As such, the Chanel Marks qualify as famous marks as the term is used in 15 U.S.C. § 1125(c)(1) and have achieved secondary meaning as identifiers of Chanel's high-quality goods. See Dkt. 1, ¶¶ 15 and 18, p. 6; Han ¶ 7, p. 3.

Chanel has never authorized or consented to the Defendant's use of the Chanel Marks, which began long after the Marks became famous. See Dkt. 1, ¶¶ 12-13 & 59-61, pp. 5-6 & 15; Han ¶¶ 12-13, pp. 4-5.

## B. **Defendant's Unlawful Activities**

Defendant [d/b/a Too Chic & Cute] sold counterfeit Chanel merchandise from multiple locations including Railway Heights Market, 8200 Washington Avenue, Houston, Texas 77007 ("Washington Avenue Location"); Big Top Entertainment (Blitzen Bazaar), Independence Park, 3449 Pearland Parkway, Pearland, Texas 77581 ("Pearland Location"); and Big Top Entertainment Shopping Market, Waxahachie Civic Center, 2000 Civic Center Lane, Waxahachie, Texas 75165 ("Waxahachie "Location"). See Dkt. 1, ¶¶ 1, 6, and 20, pp. 1-3 and 6-7; Ex. B – Voyles Decl. ("Voyles") at ¶¶ 4, 6 and 8, pp. 2-6. According to an article entitled "Rising Stars: Meet Mori Simonson," Defendant is a chemical engineer primarily employed as a project engineer for a "worldwide marine port and chemical storage company," who started "Too Chic & Cute" in early 2021. Abbott at ¶ 6, pp. 3-4; Voyles ¶ 7, pp. 4-5.

On August 4, 2022, Chanel's investigator, Joel Voyles, observed hats, earrings, necklaces, bracelets, and rings bearing Chanel Marks being offered for sale at the Washington Avenue Location. Voyles ¶ 4, pp. 2-3. He purchased a pair of earrings, received a credit card receipt identifying "Too Chic & Cute" as the seller, obtained a business card identifying "Morita Simonson" as the "Owner" of "Too Chic & Cute," and captured screenshots of Defendant's Facebook page displaying Chanel-branded merchandise. Id. and **Composite Exhibit 1** thereto.

Later that day, Voyles returned to deliver a letter from Chanel demanding that Defendant (1) immediately stop selling products bearing counterfeits and infringements of Chanel's trademarks; (2) voluntarily surrender the products and advertising materials

bearing such marks; (3) provide written confirmation that she has discontinued selling such products; and (4) provide information relating to her purchase, sale, and source of these products ("First C&D Letter"). See Dkt. 1, ¶ 30, pp. 8-9; Voyles at ¶ 5, pp. 3-4 and **Exhibit 2** thereto. Since Defendant was not present at the time, a male employee who identified himself as Defendant's father contacted Defendant by cell phone and Defendant agreed to talk to Voyles who told her he was there because she was unlawfully selling counterfeit Chanel merchandise, and he explained the First C&D Letter to her. Id. Defendant said that she wanted to ensure that Voyles was legitimate and therefore refused to endorse the Letter, voluntarily surrender any infringing products, or provide any supplier information. Id. As such, Voyles issued a verbal warning against selling counterfeit merchandise and left the Letter and his business card with Defendant's father so he could forward them to Defendant. Id.

On August 6, 2022, a second Chanel investigator under Voyles' supervision, Shelley Swaim, observed earrings and necklaces bearing Chanel Marks being offered for sale at Defendant's Waxahachie Location. Id. at ¶ 6, p. 4. Swaim purchased a pair of earrings, received a credit card receipt identifying "Too Chic & Cute" as the seller, and recognized the salesperson *as Defendant herself*. Id. and **Composite Exhibit 3** thereto; Ex. D – Swaim Decl. ("Swaim") at ¶ 3, pp. 1-2.

In response to Voyles' follow-up efforts (including his inquiry as to why she was still selling counterfeit Chanel merchandise), Defendant sent Voyles several emails including on (1) August 9, 2022, claiming she'd retained counsel and removed "all [infringing] items" from her store "[p]er [counsel's] advice;" (2) August 28, 2022, claiming she didn't think

4

selling counterfeit merchandise was illegal and that upon meeting with her lawyer "this week, [they'd] issue a formal response ….;" and (3) September 13, 2022, suggesting her lawyer would be taking legal action against Chanel for "only targeting small businesses …." <u>See</u> Dkt. 1, ¶ 31, p. 9; <u>Voyles</u> at ¶ 7, pp. 4-5 and **Composite Exhibit 4** thereto. Presumably, Defendant concocted this "phantom" lawyer/legal threat thinking it would dissuade Chanel from pursuing this matter.

Since no response was forthcoming, Chanel's undersigned counsel sent Defendant a letter via email on October 5, 2022 ("Second C&D Letter"), requesting that she either have her lawyer contact him or provide his contact information so they could communicate directly, and advising that if she failed to do so and further failed to comply with the First C&D Letter by October 14, 2022, legal action would be taken. <u>See</u> Dkt. 1, ¶ 32, pp. 9-10; <u>Abbott</u> at ¶ 3, pp. 1-2 and **Exhibit 1** thereto.

Moments later, Defendant replied via email that (1) her store was "out of business" and the infringing products were "taken out [her] sales portfolio;" (2) her lawyer was gathering information and had advised her to say nothing further; and (3) she had forwarded the Second C&D Letter to him. <u>See</u> Dkt. 1, ¶ 33, p. 10; <u>Abbott</u>. at ¶ 4, pp. 2-3 and **Exhibit 2** thereto. Chanel's undersigned counsel immediately requested again that she provide her lawyer's contact information; however, Defendant never responded (nor did any lawyer on her behalf). <u>Id</u>.

During a compliance check on December 2, 2022, Swaim observed earrings bearing Chanel Marks being offered for sale at Defendant's Pearland Location. Swaim purchased a pair of earrings and received a credit card receipt identifying "Too Chic and Cute" as the

seller.  The salesperson was Defendant's father.  <u>Voyles</u> at ¶ 8, pp. 5-6 and **Composite Exhibit 5** thereto; <u>Swaim</u> at ¶ 4, pp. 2-3.

Since Defendant continued to sell counterfeit Chanel merchandise, had repeatedly lied that she'd stopped, and refused to cooperate, Chanel filed this action on February 3, 2023.  <u>See</u> Dkt. 1, ¶ 33, p. 10; <u>Abbott</u>. at ¶¶ 4-5, pp. 2-3.  Defendant was duly served with process on February 24, 2023.  <u>See</u> Affidavit of Service [Dkt. 9].  Following service, the parties appeared to reach a tentative settlement agreement; however, Defendant stopped communicating before it was consummated.  <u>Abbott</u> at ¶ 5, p. 3.  Though Defendant was advised that Chanel would seek entry of default and a default judgment if the case didn't settle and she didn't file an answer, Defendant never responded and never answered this suit.  <u>Id</u>.  Consequently, Chanel requested entry of default on April 26, 2023 [Dkt. 11], and default was entered April 18, 2024 [Dkt. 14].

### III.  <u>ISSUES TO BE RESOLVED</u>

1.     Should a default judgment be entered against Defendant awarding Chanel the relief requested in Section I?

2.     How much should Chanel be awarded in (1) statutory damages under 15 U.S.C. § 1117(c); and (2) reasonable attorney's fees and costs?

### IV.  <u>STANDARD OF REVIEW</u>

The entry of a default judgment is entrusted to the sound discretion of the district court.  <u>See</u>, <u>e.g.</u>, <u>Arthur F. Williams, Inc, v. Helbig</u>, 208 F.R.D. 41, 44 (E.D.N.Y. 2002); <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993).  Accordingly, the standard of review is whether there was an abuse of discretion.  <u>See</u> <u>Lacy v. Sitel Corp.</u>, 227 F.3d 290,

292 (5th Cir. 2000).

District courts also have broad discretion over the amount of statutory damages awarded under Section 1117(c) of the Lanham Act.  <u>See</u>, <u>e.g.</u>, <u>Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc.</u>, 269 F.3d 523, 527 (5th Cir. 2001).  As such, the standard of review is also whether there was an abuse of discretion.  <u>Id.</u>

## V.  <u>ARGUMENT</u>

### A.  <u>Standard for Default Judgments</u>

A motion for default judgment requires the court to determine (1) if a default judgment is procedurally appropriate; (2) if the plaintiff has presented a colorable claim; and (3) how to calculate damages or equitable relief.  <u>Vela v. M&G USA Corp.</u>, 2:17-cv-13, 2020 WL 421188, at *1 (S.D. Tex. Jan. 27, 2020).  The court must consider relevant factors including "whether material issues of fact exist, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion." <u>Lindsey v. Prive Corp.</u>, 161 F.3d 886, 893 (5th Cir. 1998).

A default judgment "must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings." <u>Wooten v. McDonald Transit Assoc., Inc.</u>, 788 F.3d 490, 498 (5th Cir. 2015).  Well-pleaded factual allegations are assumed to be true, except regarding damages. <u>U.S. v. Shipco General Inc.</u>, 814 F.2d 1011, 1014 (5th Cir. 1987).

## 1. **Default Judgment is Procedurally Appropriate**

All procedural requirements have been met. Defendant was duly served with process more than 17 months ago but chose not to defend this action despite being advised of the consequences. Accordingly, while a default judgment is a drastic remedy generally disfavored by the courts, Defendant's default was not caused by good faith mistake or excusable neglect. Instead, the grounds for Defendant's default are clearly established, default was properly entered, and there's no reason the Court would later be obliged to set it aside. Moreover, entry of a default judgment will not substantially prejudice Defendant who knowingly chose to ignore this action, whereas Defendant's default substantially prejudiced Chanel's efforts to maintain and protect the value of its Marks by eliminating Chanel's ability to conduct discovery to identify the sources and extent of Defendant's infringing goods and activities. See Han at ¶ 8, p. 3.

There also are no material issues of fact. Defendant admitted to selling counterfeit Chanel merchandise and Chanel's well-pleaded allegations of Defendant's liability for trademark counterfeiting, infringement, dilution, and false designations of origin are deemed true by her default.

## 2. **Chanel Presents Colorable Claims for Relief**

As shown below and indicated above, Chanel's well-pled factual allegations and corroborating evidence present colorable claims of trademark infringement under 15 U.S.C. § 1114 and Texas common law, false designations of origin [15 U.S.C. § 1125(a)(1)(A)], trademark counterfeiting [15 U.S.C. § 1114], and trademark dilution [15

U.S.C. § 1125(c)], and establish Defendant's liability for each of these claims.

### i. Federal/Common Law Trademark Infringement & False Designations of Origin

These claims have essentially the same elements of proof. <u>See</u>, <u>e.g.</u>, <u>RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC</u>, 655 F. Supp. 2d 679, 697 (S.D. Tex. 2009). To prevail, Chanel must show that (1) it possesses legally protectable trademarks, and (2) Defendant's use of these marks "creates a likelihood of confusion as to source, affiliation, or sponsorship." <u>Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.</u>, 851 F.3d 440, 450 (5th Cir. 2017).

Chanel has properly pled and demonstrated that it owns the Chanel Marks and that they are valid and legally protectable. <u>See</u> Section II(1). Being incontestable, the Chanel Marks' registrations serve as conclusive evidence of the Marks' validity, Chanel's ownership of the Marks, and Chanel's exclusive right to use the Marks in commerce in connection with the goods identified in the registrations. <u>See</u> 15 U.S.C. § 1115(b).

Chanel has also properly pled and demonstrated that Defendant's use of marks that are identical to or substantially indistinguishable from the Chanel Marks creates a likelihood confusion. <u>See</u> Dkt. 1 ¶¶ 20-26 & 35-40, pp. 6-8 & 11; <u>Han</u> ¶¶ 6-7 & 12-14, pp. 3-6. In determining whether a likelihood of confusion exists, courts consider (1) strength of plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) defendant's intent; (7) actual confusion; and (8) degree of care exercised by

potential purchasers.  Streamline, 851 F.3d at 453.  Any one factor is ordinarily not dispositive, and a finding of likelihood of confusion needn't be supported by a majority of factors.  Id.

Though Defendant's default prevented Chanel from conducting discovery to fully explore these factors, a "likelihood of confusion" certainly exists in this case where (1) the Chanel Marks are incontestable, famous, and recognized throughout the United States and around the world; (2) Defendant used marks that are identical to or substantially indistinguishable from the Chanel Marks; (3) Defendant used such marks on the same types of products on which Chanel uses the Chanel Marks, though Defendant's products are of lesser quality; (4) the parties both sell their products to consumers through storefronts and advertise through social media; and (5) Defendant's intent to profit from selling counterfeit Chanel merchandise is evidenced by her refusal to stop despite multiple warnings.

For these reasons Chanel has established its claims of both federal and common law trademark infringement, and false designations of origin.

## ii. **Trademark Counterfeiting**

To state a claim for trademark counterfeiting, Chanel must allege that Defendant (1) committed trademark infringement in violation of 15 U.S.C. § 1114(1)(a); and (2) intentionally used the trademark knowing it was counterfeit.  Springboard to Educ., Inc. v. Kipp Found., 325 F. Supp. 3d 704, 713 (N.D. Tex. 2018).  A counterfeit mark is "a spurious designation that is identical with, or substantially indistinguishable from, a registered

mark." Id. at 717 (citing 15 U.S.C. § 1127); see also 15 U.S.C. § 1116(d)(1)(B); Louis

Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d 485, 499 (S.D.N.Y. 2015)

("To be substantially indistinguishable, two marks must be 'nearly identical ... with only

minor differences which would not be apparent to the unwary observer.'").

As set forth in Sections V(A)(2)(i) and II(2) above, Chanel has (1) established that

Defendant committed trademark infringement; and (2) properly pled and produced

corroborating evidence that Defendant intentionally and knowingly used marks that were

"exact copies of, or substantially indistinguishable from, the Chanel Marks." See also Dkt.

1 ¶¶ 43-49, pp. 12-13.  Moreover, Defendant's use of counterfeit Chanel Marks was *willful*,

as evidenced by Defendant's continued sale of counterfeit Chanel merchandise after

receiving Chanel's multiple demands that she stop and her failure to appear and defend

herself against Chanel's allegations of willful misconduct.  Id.; Section II(2); see, e.g.,

Louis Vuitton Malletier and Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002)

(willfulness inferred by defendant's continued infringing behavior after receiving notice);

Arista Records, Inc. v. Beker Enter.Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003)

(willfulness inferred by defendant's failure to appear and defend).

Accordingly, Chanel has established that Defendant is liable to Chanel for willful

trademark counterfeiting.

iii.  **Trademark Dilution**

To state a claim for dilution, Chanel must show that (1) its Chanel Marks are famous

and distinctive; (2) Defendant began using marks in commerce that dilute the Chanel

Marks; (3) the similarity between Defendant's marks and the Chanel Marks gives rise to

an association between the marks; and (4) the association is likely to impair the distinctiveness of Chanel's Marks or harm the reputation of Chanel's Marks. <u>Nola Spice Designs, LLC v. Haydel Enters., Inc</u>., 783 F.3d 527, 548 (5th Cir. 2015). Dilution may be by (1) blurring, which occurs when "association arising from the similarity between a mark or trade name and a famous mark . . . impairs the distinctiveness of the famous mark;" or (2) tarnishment, which occurs when that same kind of association "harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(B)-(C). Chanel has established each of these elements.

First, Chanel has properly pled and produced corroborating evidence that the Chanel Marks are famous and distinctive. "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Courts consider the following factors to determine fame:

(i)     The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii)    The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii)   The extent of actual recognition of the mark.

(iv)   Whether the mark was registered.

<u>Id</u>. Here, Chanel sufficiently alleges and submits evidence that the Chanel Marks (1) have been federally registered and continuously, exclusively, and extensively used since the dates referenced in their respective registrations to advertise and sell Chanel's products throughout the United States and globally; and (2) are distinctive, iconic, famous, and

widely recognized as identifiers of Chanel's high-quality products.  See Section II(1).

Moreover, the registrations of the Chanel Marks are prima facie proof that the Marks are

distinctive.  Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 567 (5th Cir. 2005).

Chanel has also properly pled and produced corroborating evidence that (1) long

after the Chanel Marks became famous, Defendant began using marks that are "exact

copies of or substantially indistinguishable from the Chanel Marks" on the same types of

products that Chanel uses the Marks, but Defendant's products are of lesser quality; and

(2) Defendant's use of such marks will tarnish Chanel's reputation and diminish the value

of the Chanel Marks as indicators of the high-quality goods that consumers have come to

expect from Chanel. See Dkt. 1 ¶¶ 12, 20-21 & 59-60, pp. 5-7 & 15; Han ¶¶ 12-14, pp. 4-6.

Accordingly, Chanel has established that Defendant is liable to Chanel for

trademark dilution.  See , e.g., Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., 778 F. Supp.

2d 726, 751 (N.D. Tex. 2011) (use of identical mark weighs in favor of showing likelihood

of dilution).

**3.  Chanel is Entitled to a Permanent Injunction, Statutory Damages,
     Reasonable Attorney's Fees, and Costs**

**i.  Permanent Injunction**

The entry of a permanent injunction is a standard remedy for violations of the

Lanham Act, "since there is no adequate remedy at law for the injury caused by a

defendant's continuing infringement."  See, e.g., Wescosign, Inc. v. IFG Holdings, Inc.,

845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012).

Permanent injunctive relief is appropriate if the plaintiff demonstrates that (1) it has

suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy of equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

Chanel has met these requirements. Defendant's use of the Chanel Marks constitutes an irreparable injury to Chanel's Marks, reputation, and goodwill, and there's no evidence that monetary damages alone will prevent future infringement given Defendant's (1) repeated failure to comply with Chanel's multiple demands that she cease infringing the Chanel Marks; (2) lies that she'd removed the counterfeit Chanel merchandise from her inventory and stopped selling it when in fact she hadn't; and (3) default. See Dkt. 1 ¶¶ 25, 27, 40, & 56, pp. 8, 11 & 14; Han ¶¶ 8, p. 3; Section II(2). Moreover, the irreparable harm to Chanel greatly outweighs any hardship that a permanent injunction would cause Defendant who has absolutely no interest in the Chanel Marks she's infringing, and "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." Board of Regents of the University of Houston System v. Houston College of Law, 214 F. Supp. 3d 573, 605 (S.D. Tex. 2016).

For these reasons, Chanel respectfully submits that Defendant should be permanently enjoined from infringing the Chanel Marks.

## ii. **Statutory Damages**

Chanel elects to recover statutory damages for its federal trademark counterfeiting claims pursuant to 15 U.S.C. § 1117(c). Courts have found statutory damages "[e]specially appropriate" in default cases such as this due to infringer nondisclosure. See Petmed Express, Inc. v. Medpets.com, Inc., 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004).

Section 1117(c)(1) provides for an award of not less than $1,000 nor more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just. See 15 U.S.C. § 1117(c)(1). However, in cases like this where the Defendant's counterfeiting actions are found to be *willful*, the court has discretion to impose damages of up to $2,000,000 per counterfeit mark per type of good or service sold, offered for sale, or distributed. See 15 U.S.C. § 1117(c)(2).

Congress enacted the statutory damages remedy in trademark counterfeiting cases to (1) compensate trademark owners for losses since it's often impossible to prove actual damages or a defendant's profits because "'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept;" (2) punish wrongdoers; and (3) deter future misconduct. See e.g., Gucci America, Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004), overruled on other grounds, Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 106 (2d Cir. 2012) (quoting S. Rep. 104-177, at 10 (1995).

District courts have broad discretion in setting the amount of statutory damages awarded under the Lanham Act. See, e.g., Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc., 269 F.3d 523, 527 (5th Cir. 2001). In fact, an award of statutory damages is appropriate even if a plaintiff is unable to prove any actual damages caused by

the defendant's infringement.  See Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are *nominal* or *non-existent*.") (emphasis added); Phillip Morris U.S.A., Inc. v. Liu, 489 F. Supp. 2d 1119, 1123-24 (C.D. Cal. 2007) (even if plaintiff suffered only *nominal* damages, it's permissible to award *maximum* statutory damages to compensate plaintiff, punish defendant for his willful violations, and deter defendant and other counterfeiters).

Although the Lanham Act does not provide courts with guidelines as to how to select a damage figure within the statutory range, courts generally consider the willfulness of the defendant's conduct, the value of the trademark, whether the defendant cooperated in providing the necessary records to access the value of the infringing material, the deterrent effect of an award on the defendant and others, and the losses sustained by the plaintiff. See, e.g., Cartier Intern. B.V. v. Ben-Menachem, 2008 WL 64005, *14 (S.D.N.Y. 2008).

As reflected in the Voyle's Declaration and **Composite Exhibits 1**, **3** and **5** thereto, Defendant is using the following 3 counterfeit Chanel Marks to sell 5 types of goods: (1) [Registration No. 1,501,898] to sell 4 types – earrings, necklaces, bracelets, and rings; (2) CHANEL [Registration No. 1,177,400] to sell 1 type – hats; and (3) [Registration No. 4,241,822] to sell 1 type – hats.  Thus, there are 6 counts for which statutory damages are warranted. The Chanel Marks are unquestionably iconic, famous, and of great value to Chanel, and there's no legitimate reason for Defendant to be using counterfeit Chanel Marks in this manner other than to trade on Chanel's reputation and the goodwill associated

with the Marks to unjustly enrich herself. There's also no question she did so willfully. Defendant ignored Chanel's multiple demands that she stop selling counterfeit Chanel merchandise, and then lied that she'd removed such merchandise from her inventory and stopped selling it, which wasn't true.

As Defendant refused to cooperate with Chanel during its investigation and then deprived Chanel of any discovery by virtue of her default, Chanel is unable to determine the size of Defendants' operation and the volume of counterfeit Chanel merchandise she illegally sold. However, Defendant must have found these illicit sales to be lucrative. Although she was gainfully employed as a chemical/project engineer with a "worldwide marine port and chemical storage company," Defendant sold counterfeit Chanel merchandise from at least 3 locations and refused to stop. Such misconduct (1) damaged Chanel's reputation and the goodwill associated with the Chanel Marks, which Chanel has spent considerable time, effort, and resources promoting to become valuable assets that symbolize Chanel and its products; and (2) unnecessarily forced Chanel to spend considerable time and resources to stop it. See Section II(2); Han ¶¶ 7-8, p. 3; Dkt. 1 ¶¶ 15, 30-33, & 56, pp. 6, 8-10, & 14.

For these reasons, Chanel respectfully requests a statutory damage award of $90,000 arrived at as follows: a statutory award of $1,500 for each of the 6 counts (which is (1) just $500 more than the statutory minimum award of $1,000; (2) infinitesimal compared to the value of the Chanel Marks counterfeited and Chanel's costs to stop it; and (3) a very conservative estimate of Defendant's minimum sales of each type of goods given her 3 locations and refusal to stop selling them) increased by a multiple of 10, as other courts

have done in recognition of the Lanham Act's intent to multiply an award by a factor of 10 where *willfulness* is found. See, e.g., Money Management International, Inc. v. Le, No. 4:21-cv-01802, 2022 WL 1610576, at *6 (S.D. Tex. April 27, 2022); Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp., 954 F. Supp. 2d 145, 156 (E.D.N.Y. 2013). This amount is substantially less than the maximum amount ($12,000,000) that could be awarded under the circumstances, and it fairly achieves the legislative purposes of Section 1117(c), namely compensation, punishment, and deterrence.

Since monetary damages for Chanel's other claims established herein would at least in part be duplicative of the statutory damages requested above, Chanel requests that judgment for those claims be limited to the statutory damages awarded and entry of the equitable relief requested.

### iii. **Attorney Fees**

Chanel is also entitled to recover its reasonable attorney fees under 15 U.S.C. §§ 1117(a) and (b). Section 1117(a) provides that the court may award the prevailing party its reasonable attorney fees in *exceptional* cases. See 15 U.S.C. § 1117(a). An exceptional case is one in which the defendant's infringement can be characterized as "malicious," "fraudulent," "deliberate," or "willful." Schotzky's, Ltd. v. Sterling Purchasing & Nat'l Distribution Co., Inc., 520 F.3d 393, 402 (5th Cir. 2008). Likewise, Section 1117(b) provides that reasonable attorney fees *shall* be awarded in trademark counterfeiting cases such as this absent "extenuating circumstances." See 15 U.S.C. § 1117(b). In fact, an award of attorney fees is virtually mandatory upon finding that the counterfeiter acted with knowledge and intent. See Dunkin' Donuts, Inc. v. Mercantile Ventures, 1994 WL 93257,

*2 (5th Cir. March 7, 1994).

As set forth in Sections II and V(A)(2)(ii), Defendant intentionally, knowingly, and willfully used counterfeit Chanel Marks in connection with the sale of her goods, and extenuating circumstances do not exist. Accordingly, Chanel has established an exceptional case and is entitled to recover its reasonable attorney fees in the sum of $26,911.50 See Abbott ¶¶ 7-12, pp. 4-6.

## iv.  Costs

Chanel is further entitled to recover its costs under both 15 U.S.C. § 1117(a) and Rule 54(d) of the Federal Rules of Civil Procedure. See 15 U.S.C. § 1117(a) (prevailing plaintiff entitled to recover "the costs of the action"); Fed. R. Civ. P. 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs ... should be allowed to the prevailing party."); Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Service, LLC, 553 F. Supp. 2d 201, 210-11 (E.D.N.Y. 2008) (courts generally award costs to the prevailing party in trademark cases, including taxable costs such as filing fees, and "out-of-pocket litigation costs such as … service of process … if such costs are necessary for the representation of the client.").

Here, Chanel is seeking to recover costs in the sum of $554.52 consisting of the $402.00 fee for filing its Complaint with the Clerk, and the $152.52 fee for serving Defendant with process. Abbott ¶ 13, pp. 6-7. These costs were reasonable and necessary for Chanel's prosecution of this case. Id. The Clerk's filing fee is expressly recoverable under 28 U.S.C. § 1920(1), which provides in pertinent part that "a court may tax the following costs: (1) fees of the clerk ...." As for the cost of the private process server, the

Fifth Circuit has held that such costs are only recoverable in exceptional circumstances. See Zastrow v. Houston Auto M. Imports Greenway, Ltd., 695 F. App'x 774, 780 (5th Cir. 2017) (citing Cypress-Fairbanks Independent School Dist. v. Michael F. by Barry F., 118 F.3d 245, 257 (5th Cir. 1997). In Cypress-Fairbanks, the court found that there was nothing exceptional to justify the cost of using a private process server to serve the two defendants in that case, *where the defendants' counsel had agreed to accept service on their behalf and didn't object to the use of service by mail*. Cypress-Fairbanks, 118 F.3d at 257. That is not the case here. Any attempt to procure Defendant's agreement to accept service by mail or any other means would have been a futile waste of time and money, as demonstrated by Defendant's refusal to (1) respond or comply with Chanel's C&D Letters; (2) provide her "lawyer's" contact information; and (3) respond to Chanel's Complaint. See Section II(2). Accordingly, exceptional circumstances exist to justify Chanel's use of a private process server and the cost of this server was reasonable and necessary to bring Defendant before this Court.

For these reasons, Chanel respectfully submits that it's entitled to recover its reasonable and necessary costs in the sum of $554.52.

## VI. CONCLUSION

Chanel respectfully requests that the Court enter a Final Default Judgment and Permanent Injunction ("Judgment") against Defendant in the form attached hereto, awarding Chanel: (1) permanent injunctive relief as set forth in the proposed Judgment; (2) $90,000 in statutory damages under 15 U.S.C. § 1117(c); (3) $26,911.50 in reasonable attorney's fees and $554.52 in costs; and (4) post-judgment interest.

Dated: August 20, 2024

Respectfully submitted,

BY: s/Steven M. Abbott
Steven M. Abbott
State Bar No. 00797825
Federal I.D. No. 9027
Attorney-in-charge for Plaintiff
Chanel, Inc.
6363 Woodway Drive, Suite 825
Houston, Texas 77057
Telephone: (713) 467-1669
Facsimile: (713) 467-4936
E-mail: abbottsteven@hotmail.com

## CERTIFICATE OF WORD COUNT

In accordance with Judge Eskridge's Procedure 18(c), I hereby certify that the Word Count of the above and foregoing Plaintiffs' Motion for Entry of a Final Default Judgment and Permanent Injunction Against Defendant, and Memorandum of Law in Support (exclusive of the case caption, table of contents, table of authorities, signature block, and certificates) is 5342 according to my word-processor register.

s/Steven M. Abbott
Steven M. Abbott

## CERTIFICATE OF CONFERENCE

In accordance with Judge Eskridge's Procedure 17(a) and Local Rule 7.1(D) of the United States District Court for the Southern District of Texas, I hereby certify that on several occasions including March 29, 2023 and April 24, 2023, I advised Defendant that she was in default and that if the parties didn't resolve their dispute and she didn't file an answer or motion under Rule 12 of the Federal Rules of Civil Procedure with the Court, Chanel would seek entry of default and a default judgment. Despite these warnings, Defendant ceased all communications before a settlement was consummated and she has never filed an answer or Rule 12 motion with the Court.

s/Steven M. Abbott
Steven M. Abbott

## <u>CERTIFICATE OF SERVICE</u>

      In accordance with Local Rule 5.5 of the United States District Court for the Southern District of Texas, I hereby certify that on this the 20th day of August, 2024, a true and complete copy of the above and foregoing Plaintiffs' Motion for Entry of a Final Default Judgment and Permanent Injunction Against Defendant, and Memorandum of Law in Support was duly served on Defendant Morita Simonson by forwarding said copy via certified mail, return receipt requested, to Defendant addressed as follows:

      Ms. Morita Simonson
      29202 Sedgefield Street
      Spring, Texas 77386

                      <u>s/Steven M. Abbott</u>
                      Steven M. Abbott